Harper, J.
If there were nothing in the case but this, that Levy had placed goods in the hands of the defendants, directing them to sell them and pay over the proceeds to the plaintiff, I suppose there would be no question but that the plaintiff might maintain the action for money had and received for those proceeds. Where money is paid by A, to B, for the use of C, C may maintain an action for money had and received, even where the money has been paid on an illegal contract. Tenant v. Elliott,1 Bos.& Pul. 3; Farmer v. Russell, Ib. 292. It certainly makes no difference that instead of paying money he delivers goods, directing them to be sold and the money paid to C. In such case the consideration, as between A and C, on which the money was to be paid, would not come into ques. tion; B, a mere agent, would have no right to inquire into that. As in this case it would be immaterial whether the plaintiff held Levy’s note, or whether he had discounted it in Bank, and the money was to be paid to him as an indemnity against his future liability as indorser. The money in B’s hands would be the consideration .on which the law would raise an implied promise to pay to C. In this case, however, there was more than an implied promise, for the testimony reported to us shews an express promise by the defendants to pay the proceeds of the goods to the plaintiff. This surely cannot weaken the plaintiff’s case. Whatis there in the present case to make it different from the one I have supposed ? Two circumstances are relied on, — First, the general right in point of law, of the defendants, to retain for the debt due to them from Levy ; and secondly, Levy’s express agreement that they should so retain, made, as is supposed, by his communication of the 16th of March 1832.
With respect to the first, I suppose that the defendants would have the privilege of factors to retain for their own debt; or if an action were brought against them by Levy, for the proceeds of the goods, they might set it off. But they have no right of set off against the plaintiff, and by their promise to pay over the proceeds of the goods to him, they have expressly waived their privilege of retainer. If authority be wanting to shew that they might so receive, it will be found in Walker v. Birch, 6 T. R. 258, where it was held that a factor receiving goods on an agreement to sell them, and *306 apply the proceeds to a particular purpose, is not entitled to retain. It is said that no doubt a tactor has a lien f°r a general balance, but it is a maxim as old as our law, that conisentio vincit. The case of Weymouth ». Boyer, j Ves. jun. 416, referred to in the argument, was very much like the present. In that case it was first agreed in writing to sell to the plaintiff forty-five hogsheads of tobacco in payment of a debt. An arrangement was after-wards made that they should be sold by the debtor’s factor, and the proceeds paid to the plaintiff. The factor understood this arrangement, and it was held that he had not a right to retain for his own debt. Justice Buller expresses his opinion that the action of tróver Would not have Iain, as the agreement to sell the tobacco was revoked by the subsequent arrangement. The action for money had and received, he thinks, would have lain, but that is an equitable action, and the plaintiff needed a discovery of what the tobacco sold for.
Then as to Levy’s communication of the 16 March, 1832, if that had been the most formal agreement, that defendants should sell the goods and retain the proceeds for their own debt, I should concur with the presiding judge in holding that they had abandoned it by their subsequent undertaking to pay the proceeds to plaintiff What other possible interpretation could be put upon their explicit promise, unaccompanied by any information to the plaintiff ofLevy’s debt to them. They probably supposed that the goods would sell for enough to pay both; but by their unconditional promise to the plaintiff, they must be understood to have taken the risk of that. But in truth the communication in question is not an agreement, nor even a proposal for an agreement, after mentioning to defendants his embarrassments and that he should probably close his business. Levy adds, “as soon as my mind is completely made up on the subject, I will give you the sale of stock, and out of the proceeds you can pay yourselves.” Here is neither a stipulation nor proposal. It is simply an annunciation of what he intended to do on a certain contingency, to which, of course, he supposed the defendants could make no objection. He probably intended to incline the defendants to indulge him, and not have his note protested, but there is no stipulation to this effect, and the whole matter remained.
The case has no relation to the statute of frauds; it was not an undertaking for the debt of another, but for their own, which was created by the proceeds of the goods coming into their hands, and this was the consideration of their promise to the plaintiff. It was not a promise to pay Levy’s debt, but to pay over the proceeds of the goods. It is true that if the *307 goods had sold for more than enough to pay the debt, they would only have paid over to the amount of the debt, but if they had sold for less than the debt, they would only have been bound to pay over what they actually received/ The consideration was co-extensive with the promise.

The motion is refused.

Johnson, J. concurred.
O’Neall, J. absent.